UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CLARE YAGER,

                Plaintiff,

     v.

COUNTY OF ERIE and
BRIAN FIUME, *Associate Deputy Comptroller*,

                Defendants.

**DECISION AND ORDER**
21-CV-68S

# I. INTRODUCTION

In this action, Plaintiff Clare Yager alleges that her employer, County of Erie, and Brian Fiume, Associate Deputy Comptroller, discriminated and retaliated against her in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., and § 296 of the New York Human Rights Law ("NY HRL"). She further alleges under 42 U.S.C. § 1983 that Defendants deprived her of due process.

Presently before this Court is Defendants' motion for summary judgment, which Yager opposes. (Docket Nos. 18, 20-22.) For the following reasons, Defendants' motion is granted in part and denied in part.

# II. BACKGROUND

Yager worked full time for the County of Erie in the comptroller's office as a data processing control clerk from 2012 to June 28, 2019. See Deposition of Clare Yager

1

("Yager Dep."), Docket No. 18-4, pp. 11-12, 25[1]; Plaintiff's Rule 56 Statement Response ("Plaintiff's Statement"), Docket No. 20-1, ¶ 3.   Her duties included processing invoices and checks, stuffing envelopes, and sorting and transporting mail.   <u>See</u> Yager Dep., pp. 13-17.   She also served as a substitute secretary/receptionist.   <u>Id.</u> p. 13.

In April 2018, Yager, who was 60 years old, suffered a workplace injury that required her to go out on workers' compensation leave.   <u>See id.</u> pp. 9, 20, 27, 30, 60-61; Defendants' Statement of Uncontested Material Facts ("Defendants' Statement"),[2] Docket No. 18-2, ¶¶ 4, 6, 7; Plaintiff's Statement, ¶¶ 4, 6, 7.   She injured her back cleaning up water that had spilled in front of a water cooler.   <u>See</u> Yager Dep., pp. 27-29. Yager notified her supervisor, Cindy Arth, of her injury and soon went on workers' compensation leave because she could not walk and had little feeling from her chest down.   <u>Id.</u> pp. 28-30.

By letter dated June 18, 2018,[3] Yager advised Defendant Fiume that she was medically cleared to return to work on November 19, 2018, but would require accommodations consisting of an adjustable desk (sit/stand), a lifting restriction (no

---

1 All page citations are to the numbers generated by the court's electronic case-management system (CM/ECF).

2 Yager objects to numerous factual statements set out in Defendants' Statement of Uncontested Material Facts on the grounds that the statements "contain[ ] no citation that can be accepted into evidence, as it purports to be supported only by Defendants' attorney's affirmation."   <u>See</u> Plaintiff's Statement, ¶¶ 7-11, 13, 14, 16, 18.   While Yager is correct that the Declaration of Andrea Schillaci, Docket No. 18-1, is cited, she fails to recognize that it is the evidentiary exhibits attached to the Schillaci Declaration that are referenced, not any factual assertions by counsel.   Her objections are thus misplaced.

3 This letter is dated June 18, 2019, but the parties agree that the year is erroneously noted as 2019, instead of 2018.   <u>See</u> Defendants' Statement, ¶ 9; Plaintiff's Statement, ¶ 9.

greater than 10 pounds); and a temporary part-time schedule.[4]   <u>See</u> Letter, Docket No. 18-5, pp. 2-3; Yager Dep., p. 31.   The temporary part-time schedule was intended to facilitate Yager's transition back to full-time work.   <u>See</u> Yager Dep., p. 37.   According to Yager, her doctors wanted her to work 20 hours her first week back, 25 hours the next week, 30 hours the third week, and 35 hours the fourth week, with resumption of her full-time schedule after one month.   <u>See</u> Letter, Docket No. 18-5, pp. 2-3; Yager Dep., p. 37.

Yager continued to pursue her return to work in November 2018 through Frank Cammarata at the Erie County Office for People with Disabilities.   <u>See</u> Emails, Docket No. 18-5, pp. 4, 5; Yager Dep., pp. 32-33, 68-69.   Cammarata employed the County's procedures for processing accommodation requests by contacting the comptroller's office to determine whether Yager could be accommodated.   <u>See</u> Deposition of Frank Cammarata ("Cammarata Dep."), Docket No. 18-6, pp. 7-20.   The comptroller's office ultimately advised Cammarata that it could not accommodate Yager's request for part-time work.   <u>Id.</u> p. 23; Email, Docket No. 18-5, p. 5.   The 10-pound lifting restriction also could not be accommodated.   <u>See</u> Emails, Docket No. 18-5, pp. 6-8.

Cammarata advised Yager throughout the process that her required accommodations could not be met, culminating in an April 20, 2019 letter to that effect from Cammarata to Yager.   <u>See</u> Emails, Docket No. 18-5, pp. 4-7; Letter, Docket No. 18-5, p. 9.   Yager complained about the denial of her request for accommodation to her

---

4 There is some inconsistency concerning when Yager was medically cleared to return to work.   While she sent Defendant Fiume this letter in June 2018, she contradictorily testified at her deposition that she was medically cleared to return to work at the end of October or early November 2018.   <u>See</u> Yager Dep., p. 31.

union and to Cammarata, but she never filed a grievance.   <u>See</u> Yager Dep., pp. 62-63.
Yager's employment with the comptroller's office was eventually terminated, effective
June 28, 2019, under § 71 of the Civil Service Law, because she was absent from work
for at least one year due to her disability.   <u>See</u> Letter, Docket No. 18-5, p. 14.   No pre-
termination hearing was held.   <u>See</u> Yager Dep., pp. 66-67.   At no time between her
injury and her termination was Yager medically cleared to return to full-time work.   <u>See</u>
Yager Dep., p. 98.

As it concerns her age-related claims, Yager testified that she once overheard the
comptroller's secretary, Brendon Najm, say to a group of young people, "I can't wait until
we get rid of all the old people in here."   <u>See</u> Yager Dep., pp. 69-71.   Najm made this
comment to a group of employees in their twenties and thirties the day after an
employee's retirement.   <u>Id.</u> p. 71.   Yager testified that she believed the comment was
directed at her and others.   <u>Id.</u> p. 70.   On another occasion, Yager heard Comptroller
Stefan Mychajliw say in a department meeting that he was no longer going to hire from
within and was instead going to hire "nothing but young and energetic people to take the
place of the people that will be retiring in the next couple of years."   <u>Id.</u> pp. 81-82.

As it relates to her retaliation claims, Yager maintains that Defendant Fiume
attempted to have her written up on false charges because her name appeared on a
published list of county employees who had previously sued the County (arising from an
EEOC disability discrimination settlement with the County in 2017).   <u>See</u> Yager Dep., pp.
41, 47, 71-72.   Defendant Fiume was aware of the case and the settlement because the
paperwork passed through his office.   <u>Id.</u> pp. 45-46.

The retaliatory incident began in January 2018, when Yager went to a job interview in another department during one of her work breaks.  Id.  Upon her return, Defendant Fiume confronted Yager in a hostile manner and demanded to know where she had been. Id. pp. 41, 42.  One week later, Kevin Mulhern, another of Yager's supervisors, informed her that she was going to be written up, at Defendant Fiume's direction, for abusing county time.  Id.  Defendant Fiume claimed that Yager was wandering around the building picking up invoices from other departments, not attending a job interview.  Id. p. 41.  In the end, Yager was not written up, but she was watched closely and followed on her breaks.  Id. pp. 43, 49-52, 56-57, 78, 84-85.  Yager testified that Defendant Fiume wanted the false charges filed against her because he was upset that she had previously sued the County.  Id. pp. 71-72.

## III. DISCUSSION

Yager alleges five causes of action.  First, she alleges that Defendants discriminated against her based on her age, in violation of the ADEA.  Second, she alleges that Defendants discriminated against her based on her disability, in violation of the ADA.  Third, she alleges that Defendants retaliated against her for engaging in protected activity, in violation of both the ADEA and the ADA.  Fourth, she alleges that Defendants discriminated and retaliated against her in violation of the NY HRL.  Finally, Yager alleges that Defendants violated her Fourteenth Amendment right to due process by terminating her employment without a hearing.  Defendants seek summary judgment on each claim.

### A.  Summary Judgment Standard

5

Summary judgment is proper "only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010); see Fed. R. Civ. P. 56 (a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

When faced with a motion for summary judgment, the court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249; see also Jeffreys v. City of New York, 426 F.3d 549, 551 (2d Cir. 2005) ("district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage"). In making this determination, the court must consider the record evidence "taken as a whole," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), and may not "consider the record in piecemeal fashion, trusting innocent explanations for individual strands of evidence," Kaytor, 609 F.3d at 545.

The court must further "draw all reasonable inferences in favor of the nonmoving party even though contrary inferences might reasonably be drawn." Moll v. Telesector Res. Grp., 94 F.4th 218, 227 (2d Cir. 2024) (quotation marks and citations omitted); see also Addickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (explaining that, at the summary-judgment stage, the evidence and the

6

inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion").   Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper."   Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted).   "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper."   Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

In examining motions for summary judgment, the court must refrain from making credibility determinations or weighing evidence: "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."   Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).   The court also "must disregard all evidence favorable to the moving party that the jury is not required to believe."   Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

Yet a party opposing summary judgment must do more than cast a "metaphysical doubt" as to the material facts, Matsushita, 475 U.S. at 586; it must "offer some hard evidence showing that its version of the events is not wholly fanciful,"   D'Amico v. City of New York, 132 F.3d 145, 49 (2d Cir. 1998).   That is, a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment.   Anderson, 477 U.S. at 252. There must be evidence from which a factfinder could reasonably find for the nonmoving party.   Id.   Reliance on conclusory statements, unsubstantiated speculation, or mere allegations will not suffice.   F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir.

7

2010) (quotation omitted); <u>Davis v. New York</u>, 316 F.3d 93, 100 (2d Cir. 2002).

In employment-discrimination cases, the United States Court of Appeals for the Second Circuit has instructed district courts to use extra care when deciding whether to grant summary judgment, because "the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited to summary adjudication." <u>Eastmer v. Williamsville Cent. Sch. Dist.</u>, 977 F. Supp. 207, 212 (W.D.N.Y. 1997) (quoting <u>Gallo v. Prudential Residential Servs.</u>, 22 F.3d 1219, 1224 (2d Cir. 1994)). Because direct evidence of discriminatory intent is rare, <u>see</u> <u>Holtz v. Rockefeller & Co., Inc.</u>, 258 F.3d 62, 69 (2d Cir. 2001), <u>abrogated on other grounds by</u>, <u>Gross v. FBL Fin. Servs., Inc.</u>, 557 U.S. 167, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009), "the court must scrutinize affidavits and depositions carefully for circumstantial evidence that, if credited by the factfinder, could reasonably be interpreted as showing discrimination," <u>Moll</u>, 94 F. 4th at 228.

But that does not preclude summary judgment in employment-discrimination actions: "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir. 1985). Indeed, the Second Circuit has noted that "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." <u>Id.</u>

### B. Defendants' Motion for Summary Judgment

Defendants County of Erie and Fiume seek summary judgment on each of Yager's claims. At the outset, this Court notes that each of the federal discrimination and

retaliation claims must be dismissed against Defendant Fiume, because individuals cannot be held liable under either the ADEA or the ADA.[5]  See Martin v. Chem. Bank, 129 F.3d 114, at *3 (2d Cir. 1997) (ADEA); Wang v. Palmisano, 157 F. Supp. 3d 306, 338 (S.D.N.Y. 2016) ("[C]ourts in the Second Circuit have consistently held that the ADEA does not impose liability on individuals." (collecting cases)); Ivanov v. N.Y. City Transit Auth., No. 13 Civ. 4280, 2014 WL 2600230, at *5 (S.D.N.Y. June 5, 2014) (ADA). Yager's federal claims will therefore be analyzed as against only the County of Erie.

### 1.  ADEA Claims

#### a.  ADEA Discrimination

Under the ADEA, it is "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a).

ADEA claims lacking direct evidence are analyzed under the familiar three-part burden-shifting test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  See Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009).  Under this framework, the plaintiff must first establish a prima facie case of age discrimination by showing that (1) she was a member of a protected class (at least 40 years of age at the relevant time); (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances of that adverse

---

5 In contrast, the NY HRL permits individual liability on an aiding-and-abetting theory.  See Baptiste v. City Univ. of N.Y., 680 F. Supp. 3d 415, 427 (S.D.N.Y. 2023) (collecting cases).  Yager's state-law claims against Defendant Fiume are therefore not subject to outright dismissal.

employment action give rise to an inference of age discrimination.   See Burger v. New York Inst. of Tech., 94 F.3d 830, 833 (2d Cir. 1996); 29 U.S.C. § 631.   This burden is de minimis.   See Mendillo v. Prudential Ins. Co. of Am., 156 F. Supp. 3d 317, 338 (D. Conn. 2016) (citing Timbie v. Eli Lilly & Co., 429 F. Appx. 20, 22 (2d Cir. 2011)); see also Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000) (describing the plaintiff's initial burden as minimal).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions which, if believed by the trier of fact, would support a determination that unlawful discrimination was not the but-for cause of the adverse employment action.   See Gross, 557 U.S. at 176-77 (explaining that the plaintiff bears the burden on an ADEA claim of proving that age was the but-for cause of the challenged action); Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010); cf. Bickerstaff v. Vassar Coll., 196 F.3d 435, 446 (2d Cir. 1999) (noting that the defendant's burden is not a demanding one, as the burden of persuasion always remains with the plaintiff).   If the defendant meets this burden, "the presumption of discrimination arising with the establishment of the prima facie case drops from the picture."   Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (citations omitted); see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

The burden then shifts back to the plaintiff to "come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination."   Id.   It is not enough for the plaintiff to produce some evidence of

10

discrimination; rather, to survive a motion for summary judgment, the plaintiff must present both sufficient evidence that the purported non-discriminatory reason was false and evidence that age was the but-for cause of the adverse actions.    See id.; Gross, 557 U.S. at 176.    To that end, the plaintiff must produce "evidence from which it can reasonably be inferred that the challenged adverse action would not have occurred absent age-based animus."    Horwath v. DHD Windows and Doors, LLC, Civil Action No. 3:18-cv-1422 (CSH), 2020 WL 3316560, at *9 (D. Conn. June 17, 2020) (quotation marks and citation omitted).

Yager's claim fails under this burden-shifting framework.

First, Yager cannot make out a prima facie case.    Although it is undisputed that Yager was a member of a protected age group and suffered an adverse employment action (her termination), Defendants contest whether Yager was qualified for her position and whether she has submitted sufficient evidence giving rise to an inference of discrimination.

To demonstrate qualification for a position, "a plaintiff need only show that they possess the basic skills necessary for performance of the job."    Kelepecz v. Child.'s Learning Ctrs. of Fairfield Cnty., Inc., CASE NO. 3:21-cv-136 (OAW), 2024 WL 1141821, at *6 (D. Conn. Mar. 15, 2024) (quotation marks and citations omitted).    All that is required is a minimal showing that the plaintiff is eligible for the position at a basic level. See Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91-92 (2d Cir. 2001).

Although the burden to demonstrate qualification is minimal, Yager cannot meet it. It is undisputed that Yager was never medically cleared to return to her full-time position

at any point between her workplace injury and her termination.   See Yager Dep., p. 99.

Thus, at the time of her termination, Yager could not perform the basic tasks necessary

for her job, and she points to no evidence to the contrary.   While Yager argues that she

may have been able to perform those tasks if she had been reasonably accommodated,

the ADEA contains no reasonable-accommodation provisions, and therefore, ADEA

claims do not involve reasonable-accommodation analysis.   See Johnson v. ExxonMobil

Corp., 426 F.3d 887, 893 (7th Cir. 2005); Sifuentes v. Laser Access LLC, Case No. 1:23-

cv-144, 2023 WL 2245710, at * (W.D. Mich. Feb. 10, 2023); Detz v. Greiner Indus., Inc.,

224 F. Supp. 2d 905, 914 (E.D. Pa. 2002).

Yager's evidence giving rise to an inference of age discrimination, on the other

hand, is arguably sufficient, given the minimal burden.   It consists of two stray comments

made more than one year before Yager's termination.   See Yager Dep., pp. 69-71

(testifying that Najm told a group of young people at some unspecified time, "I can't wait

until we get rid of all the old people in here"); id. pp. 81-82 (testifying that Mychajliw stated

that he was going to hire "nothing but young and energetic people to take the place of the

people that will be retiring in the next couple of months").   Since Yager carries only a de

minimis burden, this Court finds sufficient evidence giving rise to an inference of age

discrimination.

Nonetheless, Yager cannot make out a prima facie because there is no evidence

from which it can reasonably be concluded that she was qualified for her position.

But even assuming that Yager established a prima facie case of age

discrimination, the County has articulated a legitimate, non-discriminatory reason for her

termination—the application of state law triggered by her absence of at least one year due to her disability.   <u>See</u> Letter, Docket No. 18-5, p. 14.

Yager must now present sufficient evidence from which a trier of fact could reasonably conclude that the County's legitimate, non-discriminatory reason is mere pretext for unlawful discrimination and that age was the actual but-for cause of her employment termination.   <u>See</u> <u>Gross</u>, 557 U.S. at 176.   "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination."   <u>Weinstock</u>, 224 F.3d at 42.   If, instead, "the plaintiff create[s] only a weak issue of fact as to whether the employer's reason [is] untrue and there [is] abundant and uncontroverted independent evidence that no discrimination ha[s] occurred," then the defendant is entitled to summary judgment.   <u>Reese</u>, 530 U.S. at 148.

Yager fails to carry her burden at this final stage.

First, Yager fails to present sufficient evidence from which a reasonable trier of fact could conclude that the County's legitimate, non-discriminatory reason for terminating her employment is false.   As set forth in Yager's termination letter, the County ended her employment under Section 71 of the Civil Service Law because she had been absent for at least one year due to her disability resulting from an occupational injury or disease. <u>See</u> Letter, Docket No. 18-5, p. 14.   Yager admits that she suffered an injury at work, that her injury was disabling, and that she was absent from work for at least one year. <u>See</u> Yager Dep., pp. 20, 22-24, 30, 60-61, 68, 99.   Moreover, there is no evidence in the record contradicting the fact that Yager was absent for more than one year due to her disability.   Although Yager argues that the County should have permitted her to return to

13

work with accommodations, the ADEA does not require that reasonable accommodations be made. Yager thus fails to set forth sufficient evidence from which a factfinder could reasonably determine that the County's legitimate, non-discriminatory reason is false.

Second, Yager fails to present sufficient evidence from which a trier of fact could conclude that her age was the but-for cause of her termination. There is no direct evidence of age discrimination. The only age-based evidence consists of two comments made at unspecified times before Yager went out on workers' compensation leave and well before her termination. The first comment was made by the comptroller's secretary, Brendon Najm, who said, "I can't wait until we get rid of all the old people in here." See Yager Dep., pp. 69-71. The second comment was made by the comptroller, Stefan Mychajliw, who said he was going to hire "nothing but young and energetic people to take the place of the people that will be retiring in the next couple of years." Id. pp. 81-82.

"Verbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff." Henry v. Wyeth Pharms., Inc., 616 F.3d 134, 149 (2d Cir. 2010); see also Silver v. N. Shore Univ. Hosp., 490 F. Supp. 2d 354, 362 (S.D.N.Y. 2007). Without a clear nexus, the existence of stray remarks in the workplace are insufficient to defeat a summary judgment motion. See Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir. 1998).

Several factors are relevant in determining whether a nexus exists: "(1) who made the remark, i.e., a decisionmaker, a supervisor, or a low-level coworker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the

remark, i.e., whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, i.e., whether it was related to the decision making process."   Silver, 490 F. Supp. 2d at 363.

Reviewing the two comments above, this Court finds that they are stray remarks that no reasonable factfinder could conclude establish discriminatory intent.   Although a reasonable juror may well view the comments as discriminatory, particularly viewing the evidence in Yager's favor, Yager has produced no evidence that either Najm or Mychajliw were directly involved in the decision to terminate her employment.   Rather, it was Defendant Fiume who signed and sent Yager her termination letter.   See Letter, Docket No. 18-5, p. 14.   Moreover, because Yager overheard these comments while at work, they must have been made more than one year before she was terminated.   And given the timing of the remarks, they could not have been made in the context of the decision to terminate her employment.

Because Yager has produced no evidence that the two isolated comments were made by decisionmakers, were related to the decisionmaking process, or were made close in time or in relation to the termination decision, no reasonable juror could conclude on the basis of these comments that age was the but-for cause of Yager's termination. See Adams v. Equinox Holdings, Inc., 662 F. Supp. 3d 444, 458 (S.D.N.Y. 2023) ("[S]tray remarks, even if made by a decision maker, do not constitute sufficient evidence to support a case of employment discrimination [under the ADEA].");   Buckman v. Caylon Sec. (USA) Inc., 817 F. Supp. 2d 322, 336 (S.D.N.Y. 2011) (finding that an isolated remark made five months before the plaintiff's discharge was "too remote in time and

context to support a reasonable inference" that discharge was a result of discrimination); Beshty v. Gen. Motors, 327 F. Supp. 2d 208, 213 (W.D.N.Y. 2004) (finding that remark made months before the plaintiff's termination by a non-decisionmaker did not establish issue of material fact as to discriminatory intent).  Since the record contains no other evidence of age discrimination, Yager cannot meet her burden.

Accordingly, this Court finds that the County is entitled to summary judgment on Yager's ADEA discrimination claim.[6]

### b. ADEA Retaliation

The ADEA makes it unlawful for an employer to discriminate or retaliate against an individual on the basis that such individual opposed any practice made unlawful by the ADEA or filed a charge, testified, assisted, or participated in the investigation of discriminatory practices.   See 29 U.S.C. § 623 (d); see also Preuss v. Kolmar Labs., Inc., 970 F. Supp. 2d 171, 195-96 (S.D.N.Y. 2013) ("The ADEA prohibits discrimination in retaliation for an employee's opposition to discriminatory practices.").

As with the discrimination claim, Yager's retaliation claim is analyzed under the McDonnell Douglas framework.   See Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003). First, Yager must establish a prima facie case of retaliation by showing (1) participation in a protected activity under the ADEA; (2) that the County knew of her protected activity;

---

6 Yager's age-discrimination claims brought under the NY HRL are subject to the same legal standards and analysis as her federal ADEA claims.   See Sanders-Peay v. N.Y.C. Dep't of Educ., 20-CV-1115 (PKC)(VMS), 2024 WL 3937597, at *18 (E.D.N.Y. Aug. 26, 2024).   While a more liberal standard now applies under the NY HRL, it applies only to claims accruing on or after October 11, 2019.   See Passante v. Cambium Learning Grp., 23-CV-4060 (MKB), 2024 WL 4171026, at *5 (E.D.N.Y. Sept. 12, 2024) (explaining the 2019 changes to the NY HRL).   Consequently, Defendants are also entitled to summary judgment on Yager's state-law age-discrimination claim.

(3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.   See Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006); Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005) (citations omitted).

If Yager meets this burden, "a presumption of retaliation arises" and the County must then "articulate a legitimate, non-retaliatory reason for the adverse employment action."   Jute, 420 F.3d at 173.

The burden then shifts back to Yager to show that the County's proffered reason is pretext for retaliation.   See Wu v. Metro-North Commuter R.R. Co., No. 14-CV-7015-LTS-FM, 2016 WL 5793971, at *12 (S.D.N.,Y. Aug. 4, 2016) (citations omitted).   Pretext may be shown "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."   Id. (citations omitted).

Here, Yager's claim fails at the first prima facie element, because there is insufficient evidence from which a reasonable factfinder could conclude that Yager participated in age-based protected activity.   Protected activity is "action taken to protest or oppose statutorily prohibited discrimination."   Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000).   Yager presents no admissible evidence that she protested or opposed age-based discrimination.

When asked at her deposition, Yager testified that she felt retaliated against

17

because she complained to her union about the comptroller's refusal of her accommodation request and because she previously filed and settled a disability-discrimination charge.   See Yager Dep., pp. 40, 46-48, 71-72.   Neither of these circumstances involve Yager's age.   Even Yager's complaint in this action is devoid of age-based retaliation allegations.   See Complaint, Docket No. 1, ¶¶ 48-51 (alleging only disability-based protected activity).   If any age-based protected activity could be gleaned from the sparse record at all, Yager has presented no evidence that the decisionmakers knew about her activity or that it caused them to terminate her employment.   Yager therefore cannot establish a prima facie case.

In any event, even assuming that Yager could make out a prima facie case of age-based retaliation, she has failed to come forth with sufficient evidence from which a reasonable trier of fact could conclude that the County's legitimate, non-discriminatory reason for terminating her employment was false, as explained above.   And she has presented no evidence whatsoever that but-for unlawful retaliation, the County would not have terminated her employment.   See Ehrbar v. Forest Hills Hosp., 131 F. Supp. 3d 5, 36 (E.D.N.Y. 2015) ("To survive summary judgment on a claim of retaliation, a plaintiff must show that retaliatory intent was the "but-for" cause of any wrongful actions—that is, 'the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'") (quoting Univ. of Tex. S.W. Med. Ctr. v. Nassar, 570 U.S. 338, 360, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013)).

Accordingly, this Court finds that the County is entitled to summary judgment on

Yager's ADEA retaliation claim.[7]

### 2. ADA Claims

#### a. ADA Failure-to-Accommodate

The ADA requires a covered employer to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless doing so would impose an undue hardship on the covered employer. See 42 U.S.C. § 12112 (b)(5)(A).  Covered employers must therefore "make reasonable changes to their facilities, work schedules, training procedures, and the like to accommodate individuals" who can perform the "essential functions" of their jobs with or without accommodations.  Bey v. City of New York, 999 F.3d 157, 165 (2d Cir. 2021) (citing 42 U.S.C. § 12111(8)-(9)).

In the absence of direct evidence, the McDonnell Douglas framework applies to failure-to-accommodate claims under the ADA.  See Tafolla v. Heilig, 80 F.4th 111, 118 (2d Cir. 2023); Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006).  At the first step, the plaintiff must establish a prima facie case by demonstrating that "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  McBride v. BIC Consumer Prod. Mfg. Co., 583 F.3d 92,

---

7 Yager's age-based retaliation claim brought under the NY HRL are subject to the same legal standards and analysis as her federal ADEA retaliation claim.  See Alexander v. N.Y.C. Dep't of Educ., 19-cv-7023 (AJN), 2020 WL 7027509, at *11 (S.D.N.Y. Nov. 30, 2020) (citing Wanamaker v. Columbian Rope Co., 108 F.3d 462, 467 (2d Cir. 1997)).  Defendants are therefore also entitled to summary judgment on Yager's state-law age-based retaliation claim.

97 (2d Cir. 2009) (internal quotation marks, alteration, and citation omitted).    If the plaintiff establishes a prima facie case, the burden shifts to the defendant "to demonstrate that such accommodations would present undue hardships and would therefore be unreasonable."    Bey, 999 F.3d at 165 (internal quotation marks omitted).

Only the third element of the prima facie case is at issue here.    Yager maintains that she could have performed the essential functions of her job if the County had accepted her request for reasonable accommodations.    The County contends that she could not have done so, because the essential functions of her job require the ability to lift more than 10 pounds.

The Second Circuit recently set out the standard for evaluating the essential functions of a job:

> To determine a position's "essential functions" this Court conducts a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice, in which we draw all inferences in favor of the non-moving party.    The term "essential functions," which is not defined in the statutes themselves, is generally defined in ADA regulations promulgated by the Equal Employment Opportunity Commission to mean the "fundamental" duties to be performed in the position in question, but not functions that are merely "marginal."    Under this standard, a court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position, with an understanding that a reasonable accommodation can never involve the elimination of an essential function of a job. Ultimately, however, the question whether a task constitutes an essential function depends on the totality of the circumstances.

Tafolla, 80 F.4th at 119 (quotation marks, alterations, and citations omitted).

A number of factors determine the essential functions of a job.    These factors,

none of which is dispositive, include the employer's judgment, written job descriptions, time spent on the job performing the function, the inclusion of the function in a collective bargaining agreement, and the work experience of past employees.    See Stone v. City of Mt. Vernon, 118 F.3d 92, 97 (2d Cir. 1997); see also 29 C.F.R. § 1630.2 (n)(2).    These factors must be analyzed as part of a "fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice."    Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 140 (2d Cir. 1995).

Here, no evidence has been submitted concerning any collective bargaining agreement or the work experience of past employees, and the written job description does not contain a lifting requirement.    See Job Description, Docket No. 21-2.    The County instead maintains that the comptroller's office viewed Yager's position as requiring the ability to lift more than 10 pounds because she had to transport mail and perform other lifting.    For example, Gregory Gach, Deputy Comptroller, wrote to Cammarata that Yager's 10-pound lifting restriction was impossible to work around because her "responsibilities include mailing hundreds of vendor checks and moving around mail trays, and boxing records for storage."    See Email, Docket No. 18-5, p. 7.    Gach also advised that Yager was "responsible for receiving packages, maintaining the copier, office supply room, etc. . . . All of which would exceed 10 lbs."    Id.

But Cammarata wrote to Yager that "there is no specific lifting requirement for your present position," see Email, Docket No. 18-5, p. 6, and Yager testified that she never had to lift more than 10 pounds to accomplish her job duties, see Yager Dep., pp. 32, 38-39.    Moreover, Yager testified that transporting mail could be accomplished by sliding

21

the mail into a cart without lifting it, id., and that she only transported mail once or twice per month, id. p. 16.   She further testified that other members of her department were also responsible for the mail.   Id. p. 17.

Viewing this evidence in the light most favorable to Yager, this Court finds that a genuine issue of disputed fact exists as to whether lifting more than 10 pounds was an essential function of Yager's job.   A reasonable jury could find that Yager did not have to lift mail, did not have to transport mail frequently, and was not solely responsible for mail duties.   It could thus reasonably find that lifting and transporting mail was not an essential function of Yager's job.   Summary judgment on this basis is therefore precluded.

At the second step of the McDonnell Douglas framework, the County argues that summary judgment is warranted in its favor because Yager's request for part-time work was not reasonable since she held a full-time position.   Citing Lileikis v. SBC Ameritech, Inc. for the proposition that "part-time work is not a reasonable accommodation for a full-time job," the County maintains that it had no duty to create a part-time position for Yager as a reasonable accommodation.   84 F. App'x 645, 649 (7th Cir. 2003); see also Graves v. Finch Pruyn & Co., 457 F.3d 181, 187 (2d Cir. 2006) (stating that "the ADA does not require creating a new position for a disabled employee").

But in making this argument, the County fails to appreciate that Yager's request was not for a part-time position, but rather, for a *temporarily* reduced schedule to allow for a gradual return to full-time work.   See Letter, Docket No. 18-5, pp. 2-3.   The accommodation requested was to return to work half-time and to then add five hours each week until Yager could resume her full-time schedule after four weeks.   See id.; Yager

22

Dep., p. 37.   The County's insistence that it is entitled to summary judgment because it is not required to create a new part-time position for Yager is therefore misplaced.

A modified work schedule may be a reasonable accommodation.   See 29 C.F.R. § 1630.2 (o)(2)(ii) (including "part-time or modified work schedules" as an example of a reasonable accommodation).   Such a request may also be viewed as one for partial medical leave, and courts have found that medical leave also constitutes a reasonable accommodation under the ADA.   See Graves, 457 F.3d at 186 n. 6 (collecting cases). In particular, "a leave of absence may be a reasonable accommodation where it is finite and will be reasonably likely to enable the employee to return to work."   Id.

Such is the case here.   Construing the evidence in her favor, Yager's request for a partial leave of absence was finite and designed to allow her to return to full-time work. The County presents no undisputed evidence demonstrating that Yager's request was unreasonable or that the requested 4-week graduated return to a full-time schedule would have caused an undue hardship.   Summary judgment is therefore not warranted.[8]   See Noll v. Int'l Bus. Mach. Corp., 787 F.3d 89, 94 (2d Cir. 2015) ("The reasonableness of an employer's accommodation is a 'fact-specific' question that often must be resolved by a factfinder.")

---

[8] The County alternatively argues that even if it had accommodated Yager by allowing her to temporarily work part-time, she would have been unable to perform the essential functions of her job because she could not lift more than 10 pounds, and therefore summary judgment in its favor is still warranted.   See, e.g., Parker v. Columbia Pictures Indus., 204 F.3d 326, 336 n. 5 (2d Cir. 2000)(noting that an employee "may only prevail . . . if he can demonstrate that he could perform the essential functions of his job while working part-time").   As explained above, however, there exists a genuine issue of material fact as to whether the essential functions of Yager's job included the ability to lift more than 10 pounds.   Summary judgment is therefore precluded.

Accordingly, this Court finds that the County's motion for summary judgment on Yager's ADA failure-to-accommodate claim must be denied.[9]

### b.  ADA Retaliation

The ADA prohibits retaliation "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."   42 U.S.C. § 12203 (a).   Retaliation claims are subject to the same burden-shifting analysis set forth above.   See Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001).

To establish a prima facie case, a plaintiff asserting retaliation under the ADA must show that "(1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity."   Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).   Requests for reasonable accommodations are protected activities under the ADA.   See Flieger v. E. Suffolk BOCES, 693 F. App'x 14, 18 (2d Cir. 2017); Rodriguez v. Atria Senior Living Grp., Inc., 887 F. Supp. 2d 503, 512 (S.D.N.Y. 2012).   The plaintiff's burden is minimal at this stage.   Id.

---

9 Because Yager's disability-discrimination claim under the NY HRL is governed by the same legal standard that governs her federal ADA claim, Yager's state-law disability-discrimination claim against Defendants also survives summary judgment.   See Brizzi v. Utica Mut. Ins. Co., 529 F. Supp. 3d 44, 56-57 (E.D.N.Y. 2021) (citing Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 n. 3 (2d Cir. 2006)).   And while Defendant Fiume raised a perfunctory argument that each of Yager's claims against him should be dismissed due his lack of involvement, see Reply Memorandum, Docket No. 21, p. 9, the argument is not considered because it is undeveloped and raised for the first time in reply.   See ABN Amro Verzekeringen BV v. Geologistics Americas, Inc., 485 F.3d 85, 100 n.16 (2d Cir. 2007).

The burden then shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged action.   See Treglia, 313 F.3d at 721.   If the defendant does so, "the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation."   Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).

The County argues that it is entitled to summary judgment because there is insufficient proof that it knew of Yager's protected activity, and even if it did, Yager cannot prove a causal connection between her protected activity and her termination.   The protected activity at issue includes Yager's request for accommodations, her complaints about not receiving accommodations, and her previous filing of a disability-discrimination charge against the County.   Yager maintains that the County knew of this activity, and that there is sufficient evidence in the record of a causal connection.

From the record provided, there is ample evidence that the County knew that Yager was requesting accommodations to return to work, as indicated in her letter to Defendant Fiume, her multiple emails to Cammarata, and Cammarata's emails to the comptroller's office.   See Letter, Docket No. 18-5, pp. 2-3; Emails, Docket No. 18-5, pp. 4-8.   Yager also testified that she complained to her union and to Cammarata about the comptroller's denial of her requests, though she did not complain to Defendant Fiume directly.   See Yager Dep., pp. 40, 62-63.   And as to her previous disability-discrimination charge, Yager testified that Defendant Fiume knew of her previous charge and attempted to file false charges against her in retaliation for having sued the County. Id. pp. 41-42, 46-48, 71-72.   This evidence is sufficient to support a finding of knowledge.

25

The causal-connection evidence is also sufficient to defeat summary judgment. The County notified Yager that her employment was being terminated by letter dated May 28, 2019.   See Letter, Docket No. 18-5, p. 14.   This closely followed Yager's persistent attempts to gain approval of her accommodation requests or a new position with the County.   See Emails, Docket No. 18-5, pp. 4-8, 11.   Defendant Fiume, who earlier targeted Yager for discipline because she had previously filed a discrimination complaint against the County, see Yager Dep., pp. 41, 47, 71-72, signed the letter terminating Yager's employment, see Letter, Docket No. 18-5, p. 14.   A jury viewing this evidence could reasonably find a causal connection between Yager's disability-related protected activity and the termination of her employment, notwithstanding the County's position that Yager's employment was terminated because of her absence.   The County's motion for summary judgment must therefore be denied.[10]

### 3.  § 1983 Due Process Claim

In addition to her discrimination claims, Yager maintains that Defendants deprived her of her procedural due process rights by terminating her employment without holding a pre-deprivation hearing.   Defendants maintain that no such hearing was required because Yager was terminated pursuant to Civil Service Law § 71.

Forty-two U.S.C. § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

---

10 Because Yager's disability-related retaliation claim under the NY HRL are governed by the same legal standard that governs her federal ADA retaliation claim, Yager's state-law disability-related retaliation claim also survives summary judgment.   See Brizzi, 529 F. Supp. 3d at 56-57.

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983. On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution. See Graham v. Connor, 490 U.S. 386, 393-94,109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 2695 n.3, 61 L. Ed. 2d 433 (1979)). Accordingly, as a threshold matter in reviewing claims brought under § 1983, it is necessary to precisely identify the constitutional violations alleged. See Baker, 443 U.S. at 140. Here, Yager's procedural due process claim falls under the Fourteenth Amendment.

The Fourteenth Amendment Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." Reed v. Goertz, 598 U.S. 230, 236, 143 S. Ct. 955, 215 L.

27

Ed. 2d 218 (2023) (citation omitted); Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 218 (2d Cir. 2012).

With respect to any due process claim, "[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution."   Narumanchi v. Bd. of Trs. of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988).   Property interests protected by the Constitution arise out of "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits," such as those arising out of state law.   Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).   Such property interests may include continuation of or eligibility for public benefits, tenure, and public employment contracts.   See id. at 576-77 (citing cases); Wilkinson v. N.Y. State, 2:18-CV-4148 (PKC) (LB), 2019 WL 5423573, at *16 (E.D.N.Y. Oct. 22, 2019) (noting that "[p]ublic employees have property interests in their employment against acts of termination, suspension without pay, and diminution in rank").

Defendants terminated Yager's public employment under the provisions of Civil Service Law § 71 without a pre-termination hearing.[11]   Yager maintains that she had a property interest in her employment and therefore her termination without a pre-deprivation hearing violated her due process rights.   But it is clear from Yager's papers that what she believes she was due was a hearing on the merits of the County's decision to deny her request for accommodations, not on the merits of her termination under the Civil Service Law.   See Memorandum of Law, Docket No. 20, p. 12.   Yager would have,

---

11  Whether Yager's termination under Civil Service Law § 71 was a pretext for unlawful discrimination is a separate question.

for example, explored at a hearing who made the decision to deny her accommodation request, what information was considered, and what may have influenced that decision. Id.

Defendants seek summary judgment on the basis that their compliance with Civil Service Law § 71 provided all the due process to which Yager was entitled.   Indeed, courts have held that "[i]t is well settled that a civil service employee is not deprived of due process if the employee is terminated without a pre-termination hearing pursuant to Section 71 of the Civil Service Law."   Santiago v. Newburgh Enlarged City Sch. Dist., 434 F. Supp. 2d 193, 198 (S.D.N.Y. 2006); see also Pasternak v. Baines, No. 00-CV-369C, 2006 WL 2570982, at *8 (W.D.N.Y. Sept. 5, 2006) (citing Santiago); Holmes v. Gaynor, 313 F. Supp. 2d 345, 358 (S.D.N.Y. 2004).   This is because "the Civil Service Law provides post-termination due process rights, such as the right to demand to return to work or to contest a determination of unfitness to work, which satisfy the Fourteenth Amendment."   Pasternak, 2006 WL 2570982, at *8.

Yager does not address this line of governing cases.   Because there is no dispute that Defendants complied with § 71 of the Civil Service Law in terminating Yager's employment, Yager was not entitled to a pre-termination hearing.   Summary judgment in Defendants' favor is therefore warranted.

### IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted in part and denied in part, and Yager's federal discrimination and retaliation claims against Defendant Fiume are dismissed.   Defendants' motion for summary

judgment is granted as to Yager's ADEA and NY HRL age-based discrimination and retaliation claims, as well as Yager's Fourteenth Amendment due process claim.   Their motion is denied as to Yager's ADA and NY HRL disability-based discrimination and retaliation claims.   Before proceeding to trial, the parties must engage in mediation to determine whether a pretrial resolution of this matter can be reached.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 18) is GRANTED in part and DENIED in part, consistent with this decision.

FURTHER, that Plaintiff's federal discrimination and retaliation claims are DISMISSED as against Defendant Fiume.

FURTHER, that this case is REFERRED for alternative dispute resolution under Section 2.1.B of the Plan for Alternative Dispute Resolution in the United States District Court for the Western District of New York ("the ADR Plan").

FURTHER, that the parties shall comply with all relevant requirements of the ADR Plan, which is available at http://www.nywd.uscourts.gov.

FURTHER, that the parties are directed to re-engage in mediation with a federal-court mediator of their mutual choosing.

FURTHER, that the parties shall conclude their mediation efforts by March 10, 2025.

FURTHER, that the parties must explore consent to proceeding before a magistrate judge in accordance with 28 U.S.C. § 636 (c).   The consent form is available at https://www.nywd.uscourts.gov/forms-3.   The consent process is set forth in Loc. R.

Civ. P. 73.    The parties are, of course, free to withhold consent without adverse substantive consequences.    <u>See</u> Fed. R. Civ. P. 73 (b)(2).

FURTHER, that the parties must file a joint written notice concerning the status of mediation and consent by March 24, 2025.

SO ORDERED.


Dated:         January 16, 2025
               Buffalo, New York

<u>s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge

31